## CALEB LAMSON *vs.* CITY OF NEWBURYPORT.

A city which has provided a sufficient almshouse for the support of its poor is not liable, under Gen. Sts. c. 70, § 16, to the owner of a tenement for the use and occupation thereof by a pauper whom he might have ejected therefrom, and who was able to remove to the almshouse.

CONTRACT brought to recover for the use and occupation of a tenement by Mary E. Ford, a pauper, from May 17th 1865 to October 3d 1865.

At the trial in the superior court, before *Morton*, J., the plaintiff introduced evidence tending to prove that in 1862 he let the tenement to said Ford, upon her written agreement to pay a certain monthly rent; that in the early part of 1865 she failed to pay the rent, and was sick and poor after that time, and was confined to the house by disease of her lungs for the most of the time during the spring of 1865, and until she was taken to the poor-house in October; that in May 1865 the plaintiff delivered to one of the overseers of the poor a notice that she was occupying his tenement, and was poor, sick, in need of relief and unable to pay the rent, and requesting them to provide a

tenement for her; that he afterwards received from various per‑ sons payment of the rent till May 17th; that in September he delivered to her a notice to quit for non-payment of rent; and that one of the overseers of the poor, after the receipt of the notice, consulted her about going to the poor-house, and she refused to go, and afterwards, about the 1st of October, they took her there.

Upon this evidence, the judge ruled that the action could not be maintained, and directed a verdict for the defendants; and the plaintiff alleged exceptions.

*C. Lamson, pro se.*

*S. B. Ives, Jr., & S. Lincoln, Jr.,* for the defendants.

BIGELOW, C. J. The obligation of cities and towns to fur‑ nish relief and support to paupers is created by statute. No moral duty rests on them to give aid to the needy and dis‑ tressed, and no legal liability exists except such as is derived from positive legislative enactments. Consequently no promise or undertaking on their part can be implied to pay for anything which may have been bestowed on a person standing in need of relief, unless it is shown to have been afforded under such circumstances as to come within the statutory provisions, by which towns are made liable for expenses incurred for such a purpose. By Gen. Sts. *c.* 70, § 16, it is provided that cities and towns shall be held to pay expenses " necessarily incurred " for the relief of a pauper by any person not liable by law for his support. This is the only enactment by virtue of which any claim can accrue to an individual against a city or town for money paid, services rendered or support or relief supplied for or on account of a person having a settlement therein. The claim must be proved to have been founded on the absolute necessity of a pauper; that is, it must be for such needful relief or support as the pauper could not otherwise procure or obtain.

The facts proved in the present case do not bring the claim of the plaintiff within this provision. There was no necessity for the continuance of the pauper in the plaintiff's tenement. She might at any time have had shelter and relief in the almshouse provided by the city. The plaintiff was not bound to permit

her to remain on his premises. He might at any time have ejected her therefrom. Nor was she incapable of going or being removed to the almshouse. The pauper could not elect a place of abode, and render the city liable to pay rent therefor; nor could the plaintiff, by consenting to her occupation of his premises, create a liability which the city was bound to assume and discharge. The legal duty of the city was fully performed by providing a suitable house where poor and indigent persons lawfully settled in the city could receive shelter and support. While such provision was made, there was no necessity for the relief which the plaintiff undertook to afford, and he cannot recover compensation therefor in this action.

*Exceptions overruled.*